683 A.2d 1219

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jason Robert SHARP, Appellant.**

Superior Court of Pennsylvania.

Argued May 7, 1996.

Filed Sept. 20, 1996.

350

David J. Foster, Lemoyne, for appellant.

Daniel W. Stern, Assistant District Attorney, Harrisburg, for Com.

Before POPOVICH, SAYLOR and EAKIN, JJ.

EAKIN, Judge:

Jason Robert Sharp appeals from the judgment of sentence entered by the Court of Common Pleas of Perry County, following his conviction for possession with intent to deliver heroin. For the reasons that follow, we reverse.

On May 31, 1994, Perry County Sheriff George Frownfelter and Deputy Sheriff Donald Smith conducted a visual search of property owned by Richard Sheibley, after receiving Sheibley's permission for that search. Located in Carroll Township, Perry County, the premises were leased and occupied by appellant's parents, Timothy Loy and Christine Sharp; appellant also lived on the premises. The officers observed at least nine growing marijuana plants before they were approached by Christine Sharp. Sharp gave Sheriff Frownfelter permission to search the area around the house, where four more marijuana plants were found growing. All thirteen plants were dusted with a yellowish substance and surrounded by chicken wire. Mr. Loy arrived, and denied the officers' request for consent to search further.

Deputy Sheriff Smith decided to seek a search warrant; the only District Justice on duty at the time was Elizabeth Frown-

felter, wife of Sheriff Frownfelter. Deputy Smith presented an affidavit of probable cause, and District Justice Frownfelter issued a warrant for the search of the residence, vehicles, outbuildings, and any persons present.

The officers executed the warrant at approximately 4:30 p.m. on May 31, 1994, and in the course of their search discovered a small amount of marijuana and marijuana seeds in appellant's bedroom. In an outbuilding on the property, they discovered twelve packets of heroin, $45 in cash and a handwritten note signed "J" located nearby.

District Justice Frownfelter issued a second warrant, again upon application of Deputy Smith, for appellant's school records and documents containing his handwriting. The sheriff's office seized several of appellant's school homework assignments and test papers. Sheriff Frownfelter petitioned for and obtained an order from the Court of Common Pleas directing appellant to provide handwriting exemplars. Comparison of these exemplars indicated that the note signed by "J" was in appellant's handwriting. On January 3, 1995, appellant was charged with possession of a small amount of marijuana [1] and possession with intent to deliver heroin.[2]

On April 6, 1995, appellant filed an omnibus pretrial motion contending that the warrant to search the premises was not supported by probable cause, that a conflict of interest existed fatal to the issuance of the warrant as the district justice was married to an investigating officer in this case, and that the affidavit for the second search warrant was based on allegations tainted by the earlier constitutionally defective warrant. By order of July 18, 1995, the trial court denied appellant's pretrial motions. After a non-jury trial on that same date, the court found appellant guilty of possession with intent to deliver heroin. On August 10, 1995, following preparation of a presentence investigation, appellant was sentenced to eight to

1. The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 1, as amended; 35 P.S. § 780–113(a)(31)(i).

2. 35 P.S. § 780–113(a)(30).

twenty-three and one-half months imprisonment, plus costs of prosecution. This timely appeal followed.

In requesting that this court vacate judgment of sentence and grant him a new trial, appellant raises the following issues:

A. Whether the searches of appellant's residence, outbuildings and school records violated the state and federal constitutions where the respective warrants were issued by the district justice whose husband, the county sheriff, actively participated in and directly supervised the drug investigation leading to the execution of the probable cause affidavit, which constitutes an actual conflict and/or appearance of a conflict of interest in violation of the Pennsylvania standards of conduct on district justices?

B. Whether the search warrant for the residence and out buildings was not supported by probable cause in that the sole basis for its application was the prior observation of marijuana plants by the police, only four of which were found on the leased premises within the curtilage of the residence?

C. Whether search warrant for appellant's school records and. the court's order directing him to provide handwriting samples were not supported by probable cause because there was insufficient evidence to link heroin found in a cup along with a handwritten note signed with the letter "J" to appellant?

Our scope of review of a suppression court's ruling is confined primarily to questions of law. *Commonwealth v. Gommer*, 445 Pa.Super. 571, 573, 665 A.2d 1269, 1270 (1995). We are bound by findings of fact which are supported by the record; we may reverse only if the court's legal conclusions are in error. *Id.* As the parties herein agree on the facts, we are asked to determine only the legal implications of those facts.

Appellant contends that evidence from the search should have been suppressed because an actual conflict or an appearance of a conflict of interest existed when District

Justice Frownfelter issued a warrant in an investigation in which her husband was involved. Rule 8 of the Standards of Conduct for District Justices provides in relevant part:

A. A district justice shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(4) he or his spouse . . . :

(a) is a party to the proceeding, or an officer, director or trustee of a party;

(c) is known by the district justice to have an interest that could be substantially affected by the outcome of the proceeding;

(d) is to the knowledge of the district justice likely to be a material witness in the proceeding.

42 Pa.C.S. The Fourth Amendment requires that warrants be issued by a "neutral and detached magistrate" upon an "independent determination of probable cause." *Commonwealth v. Edmunds,* 526 Pa. 374, 409, 586 A.2d 887, 905 (1991). The integrity of the judiciary must not be compromised by the appearance of impropriety, and the conduct at issue need not rise to the level of actual prejudice. *In Interest of McFall,* 533 Pa. 24, 34, 617 A.2d 707, 712 (1992). Recusal may be required where there are circumstances that reasonably cast doubt on a jurist's impartiality, as even the appearance of bias must be avoided. *Id.* at 35, 617 A.2d at 713.

Appellant contends that District Justice Frownfelter was not neutral and disinterested because her husband not only was active in the investigation, but had total supervisory control over, was a party to and a likely witness in the proceedings. The trial court disagreed and determined that the existence of probable cause could be ascertained from the four corners of the search warrant application; as such, any partiality would be subject to discovery and remedy. Moreover, the court concluded that Sheriff Frownfelter's role was more administrative than investigative since it was his deputy who applied for the warrant.

The trial court also noted that the rural nature of Perry County often presents geographic difficulties in reaching an on-duty magistrate. "Forcing Officers to travel all the way to the other end of the County for a search warrant may present police officers with a substantial burden." Trial Court Memorandum, 10/9/95, at 5–6. We agree with the validity of this assessment. Rural or sparsely populated counties are not amenable to the convenient solutions afforded by a more densely developed environment. In smaller jurisdictions with few magistrates, the reality is that only one District Justice may be present within the county, let alone on call; and where simple alternatives are not always available. We decline to create a rule that would on occasion leave the people of Perry County without justice.

We agree there was no actual conflict of interest here, as the Sheriff was not the affiant. The appearance of a conflict is not so easily dealt with.[3] Nevertheless, we decline to hold

---

**3.** The distinction between a conflict in fact and a situation where "impartiality might reasonably be questioned" is significant. The former impugns the actual neutrality of the magistrate; appellant has a right to determination by a neutral member of the judiciary. The latter, even if a violation of the "Standards of Conduct for District Justices", is not automatically grounds to suppress the result of the District Justice's actions. It is beyond peradventure that not every error by a court demands the extreme sanction of suppression. Our Supreme Court has repeatedly held: "It is only where the violation also implicates fundamental constitutional concerns, is conducted in bad faith or has substantially prejudiced the defendant that exclusion may be an appropriate remedy." *Commonwealth v. Rucci*, 543 Pa. 261, 670 A.2d 1129, 1137 (1996) (quoting *Commonwealth v. Mason*, 507 Pa. 396, 406–07, 490 A.2d 421, 426 (1985)). Indeed, the law requires that the remedy must fit the violation, and absent some actual prejudice herein, suppression does not befit the alleged error.

Whether sanctioning the District Justice is appropriate is not our question. We must determine whether the appellant's ability to "reasonably question" the District Justice's neutrality justifies suppression of this evidence, absent actual prejudice. We find that it does not; appellant gets no free pass unless there was actual prejudice, not just the suggestion of it.

We cannot say that issuance of the warrant based on less than legally sufficient probable cause demonstrates the absence of neutrality. The trial court affirmed the existence of probable cause; unless we are prepared to ascribe bias to the learned trial court as well, we cannot do so to the District Justice. The integrity and impartiality of the trial court are unchallenged, and the trial court's affirmance of probable

that an inappropriate "appearance" was so clear as to cause negation of the warrant's validity. The better practice would be to institute procedures in magisterial districts where such relationships exist to avoid even an arguable appearance of impropriety; however, the absence of such procedures does not justify automatic negation of the District Justice's actions.

In retrospect District Justice Frownfelter should have recused herself from involvement in issuing the instant warrants; however we find no *per se* harm in this case, particularly as the district justice's issuance of the warrants is subject to at least two levels of objective review. Both the trial court and this court may review the probable cause affidavit and objectively determine its sufficiency. Moreover, any judicial impropriety may be subject to scrutiny in a disciplinary action. For the foregoing reasons, the search warrants issued by District Justice Frownfelter are not deemed defective by reason of an actual or apparent conflict of interest.

██ The viability of this proposition is manifest from our review and disposition. In determining whether the warrant is supported by probable cause, the magistrate may not consider any evidence outside the four corners of the affidavit. Pa.R.Crim.P. 2003(a); *Commonwealth v. Singleton*, 412 Pa.Super. 550, 553, 603 A.2d 1072, 1073 (1992). Probable cause either exists or it does not, and its existence must be evident solely from the affidavit itself.

██ In determining whether probable cause exists to issue a search warrant, Pennsylvania applies the "totality of the circumstances" test as set out in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and adopted in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). *Singleton*, 412 Pa.Super. at 551, 603 A.2d at 1072. The duty of an appellate court is "to ensure that the magistrate had a 'substantial basis for concluding that probable cause existed.' "

cause is no more proof of partiality than is the issuance of the warrant in the first place. We find, as did Justice McDermott, dissenting in *Edmunds*, "[All] concerned acted in good faith."

*Id.* at 552, 603 A.2d at 1073 (citations omitted). We are guided by these standards:

An affidavit for a search warrant is to be tested by this court with common sense and a realistic manner, and not subjected to overly technical interpretations; the magistrate's determination of probable cause is to be accorded great deference on review. The law is clear that before a search warrant may issue, facts supported by oath or affirmation must be presented to the issuing officer which will justify a finding of probable cause. For the warrant to be constitutionally valid, the issuing officer must conclude that probable cause exists at the time the warrant is issued. Such a conclusion may not be made arbitrarily and must be based on facts which are closely related in time to the date the warrant is issued.

*Commonwealth v. Vergotz,* 420 Pa.Super. 440, 445–46, 616 A.2d 1379, 1382 (1992), *alloc. denied,* 534 Pa. 648, 627 A.2d 179 (1993) (citations omitted).

■ An affidavit of probable cause must include facts from which a magistrate can determine the time frame within which the supporting information was acquired. *Edmunds,* 526 Pa. at 382, 586 A.2d at 891. "A search warrant is defective if the issuing authority is not supplied with a time frame upon which to ascertain when the affiant obtained the information from the informant and when the informant himself witnessed the criminal acts detailed in the affidavit of probable cause." *Commonwealth v. Murphy,* 427 Pa.Super. 578, 580–81, 629 A.2d 1020, 1021 (1993), *alloc. denied,* 537 Pa. 648, 644 A.2d 734 (1994).

■ With these principles in mind, we review the affidavit of probable cause offered in support of the application for the initial search warrant. Herein, the affiant was Deputy Sheriff Smith who declared as follows:

After receiving information about possible drug (marihuana) growing near and upon the property rented by the above named individuals and receiving permission from the owner of the property a search of the out lying area was searched

and a visual of marihuana plants growing within the curtliege [sic] of the house a consent was given to Sheriff Frownfelter to search the outside of the house by Kristine Sharp where a total of approx. 10 plants were found.

Plants outside the curtliage [sic] had chicken wire fencing around them and there was the same wire found on top of a wood pile within the curtliege [sic]. There was a yellow powder substance around the plants possible fertilizer or bug dust. Mr. Loy has a reputation to this office of being involved in the drug culture through various sources connected to the Sheriff's office.

Search Warrant and Affidavit.

The affidavit on its face lacks essential facts to support a finding of probable cause. The affidavit fails to provide a credible basis for the affiant's conclusion of Mr. Loy's involvement in the local drug culture. It is devoid of any facts regarding the reliability of the unnamed sources of the reputation information, including the basis of the information, or any reason to credit it. *See Commonwealth v. Jones,* 542 Pa. 418, 422–26, 668 A.2d 114, 116–17 (1995); *In the Interest of J.H.,* 424 Pa.Super. 224, 227–28, 622 A.2d 351, 353 (1993); *Commonwealth v. Dennis,* 421 Pa.Super. 600, 617, 618 A.2d 972, 981 (1992), *alloc. denied,* 535 Pa. 654, 634 A.2d 218 (1993). Further, the affidavit contains no references to dates or times when the information was received from the unnamed source or sources.

Moreover, the affidavit fails to specify dates or the time when the affiant received the initial information about the growing marijuana, when the informant observed the marijuana, when the property owner gave permission for a visual search of the premises, when this visual search took place and by whom. While we know from the subsequently produced record that these events occurred, the affidavit is absolutely silent on their time frame; there is no way the magistrate could determine within the four corners of the affidavit whether the information was fresh or stale. The fact that the information in this affidavit reads as current and timely today

as it did when the warrant was issued more than two years ago reveals the affidavit's fatal flaw.

Under the "totality of the circumstances" herein, and viewing the affidavit from a common sense, nontechnical perspective, *Commonwealth v. Baker*, 532 Pa. 121, 126, 615 A.2d 23, 25 (1992), the affidavit simply does not contain facts from which the district justice, or this reviewing court, could determine that a substantial basis existed to find probable cause. Therefore, we conclude that the initial search warrant for the residence and outbuildings is not valid.[4]

In light of our conclusion that the initial search warrant was invalid, we need not examine whether probable cause existed for the second warrant because it was based on information obtained in the first search; any subsequent search was tainted by the initial invalid warrant. *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455–56 (1963).

Therefore, although we decide that appellant's conflict of interest issue is not availing, we must reverse because the initial search warrant was invalid. As the subsequent actions of the Commonwealth all stem from this initial warrant, the searches of appellant's school records and handwriting exem-

---

4. As in the instant case, the *Edmunds* Court agreed that the warrant "failed to set forth a time frame from which a neutral and detached magistrate could reasonably infer that the criminal conduct observed was recent and would most likely still be in progress at the time the warrant was requested." *Edmunds*, 526 Pa. at 381, 586 A.2d at 890. Our disposition should not be read as implying that there was partiality on the part of the District Justice. The clear sense of the affidavit is one of current activity; unfortunately for the appellee, the impression of freshness is not enough. *Id.* In declining to be critical of the District Justice, we are mindful of the common sense caveat of Justice McDermott in *Edmunds:*

> The defect in the affidavit of probable cause was that the time of the offense was not specified. What was told the magistrate was that the contraband was 'growing,' a clear indication of present tense. The informants told the police that they saw it growing and the magistrate was told that it was growing and he issued a search warrant on that premise. When the police arrived it was still growing.... To suppress the evidence because a date was not specified with exactitude under those circumstances dwindles into practiced absurdity.

*Id.* at 414, 586 A.2d at 907 (McDermott, J., dissenting opinion).

plars are tainted as well. The evidence obtained as a result of these searches should have been suppressed. Accordingly, we reverse the suppression order, vacate the judgment of sentence and remand for a new trial.

Suppression order reversed; judgment of sentence vacated; case remanded for a new trial. Jurisdiction relinquished.

Concurring statement filed by SAYLOR, J.

Concurring and dissenting opinion filed by POPOVICH, J.

SAYLOR, Judge, concurring.

I join my colleagues in concluding that the search warrant at issue was invalid under the Supreme Court's holding in *Commonwealth v. Edmunds.*

I also agree with Judge Popovich that the issuing magistrate should have disqualified herself in this proceeding because of her relationship with the sheriff who supervised the investigation and supplied information in connection with the application for the search warrant. However, I am unwilling to impute any actual bias to the magistrate by virtue of the fact that she issued a search warrant on the basis of an affidavit which was technically deficient. Rather I believe, as did Justice McDermott, dissenting in *Edmunds*, that "[A]ll concerned acted in good faith."

POPOVICH, Judge, concurring and dissenting.

Presently, I agree with the majority's conclusion that "the affidavit [of probable cause for the initial search warrant] simply [did] not contain facts from which the district justice, or this reviewing court, could determine that a substantial basis existed to find probable cause", and, therefore, the warrants were not valid. However, I strongly disagree with the majority's conclusion that the search warrants issued by District Justice Frownfelter were not defective by reason of an actual or apparent conflict of interest.

The record reveals that on May 31, 1994, Sheriff George Frownfelter of Perry County and his Deputy Sheriff Donald

Smith observed numerous marijuana plants growing on the property leased by appellant's parents where appellant and his parents resided. Deputy Sheriff Smith later sought a search warrant for the property, and prepared the warrant application (including the affidavit of probable cause) for submission to District Justice Elizabeth Frownfelter, the wife of Sheriff Frownfelter. Although Deputy Sheriff Smith was the affiant and actually appeared before District Justice Frownfelter, it is important to note that the affidavit of probable cause cited Sheriff Frownfelter as the person who located the marijuana plants after a visual search. The warrant application was approved by District Justice Frownfelter, and the search resulted in the seizure of marijuana and heroin.

Unlike the majority, I am convinced that District Justice Frownfelter's failure to disqualify herself in the case *sub judice,* resulted in a clear violation of Rule 8 of the Standards of Conduct for District Justices. The rule expressly states: "A district justice *shall disqualify* himself in a proceeding in which his impartiality *might reasonably be questioned,* including but not limited to instances where ... he or his spouse ... is a party to the proceeding, or an officer, director or trustee of a party ... [or] is known by the district justice to have an interest that could be substantially affected by the outcome of the proceeding ... [or] is to the knowledge of the district justice likely to be a material witness in the proceeding."

I cannot think of a clearer situation where a district justice's "impartiality might reasonably be questioned" than the present. Here, Sheriff Frownfelter has an obvious interest in obtaining a search warrant for appellant's residence, regardless of whether he is the actual affiant or merely named as a witness in the affidavit of probable cause. The appearance of impropriety or bias must be avoided, and, in my view, District Justice Frownfelter's adjudication of the warrant application raised, at least, the appearance of impropriety (if not an actual conflict of interest) and compromised the "integrity of the judiciary." See, *In Interest of McFall,* 533 Pa. 24, 34–35, 617 A.2d 707, 712–713 (1992).

The fact that Perry County is a rural county with few district justices does not affect my decision. It is of no importance that only one district justice may be present within a county, let alone on call; rather, what is singularly important is the avoidance of situations where a district justice's impartiality might reasonably be questioned. While the majority declines "to create a rule that would, on occasion leave the people of Perry County without justice", I believe the voters of Magisterial District 41-3-05 who elected District Justice Frownfelter must accept the consequences of their election. Moreover, the majority has failed to consider that there are five district justices in the Forty-first Judicial District which includes Juniata and Perry Counties. Certainly, one of the other district justices could have been located on the day in question to review the search warrant application, and a drive across one county (or even two) to find an impartial magistrate is not an undue hardship on the authorities.

Finally, the fact that District Justice Frownfelter approved this search warrant highlights her actual bias in this action. As noted by the majority, "[t]he affidavit on its face lacks the essential facts to support a finding of probable cause." I must question how such a gravely deficient affidavit of probable cause could support the issuance of a search warrant *absent* bias toward the Sheriff's Office on the part of the issuing authority.

In sum, I find that the warrants should be suppress not only because the affidavit of probable cause was lacking, but also because District Justice Frownfelter failed to disqualify herself in a situation where her impartiality was most obviously in question.